Jonathan A. Dessaules, State Bar No. 019439
Douglas M. Imperi, Jr., State Bar No. 034708
**DESSAULES LAW GROUP**
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessauleslaw.com
dimperi@dessauleslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Saint Patrick, | No. |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT** |
| RHI 1 San Norterra, LLC; Mark-Taylor Residential, Inc.; Logen Watts; and Tracy Mendoza, | |
| Defendants. | |

Plaintiff Jennifer Saint Patrick alleges the following:

**PARTIES AND JURISDICTION**

1.      Plaintiff Jennifer Saint Patrick ("Plaintiff" and/or "Saint Patrick") lives at 28515 N. North Valley Parkway, Unit 1117, Phoenix, AZ 85085 ("Unit 1117").

2.      Defendant RHI 1 San Norterra, LLC ("RHI") is the legal owner of the San Norterra Apartments ("San Norterra")—where Saint Patrick lives.

3.      Defendant Mark-Taylor Residential, Inc. ("Mark-Taylor") is a property management company that manages communities around Arizona, including San Norterra.

4.      Defendant Logen Watts ("Watts") is the Community Manager for San Norterra.

5.      Defendant Tracy Mendoza ("Mendoza") is the Director and Residential Manager for Mark-Taylor, and she supervises Watts.

6.      This is an action for damages, declaratory judgment and permanent injunctive relief for Defendants' violations of the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. This court has jurisdiction of this action under 28 U.S.C. §§ 1331, 2201.

7.      Venue is proper in this district per 28 U.S.C. § 1391(b) and (c) because acts giving rise to the claims of Plaintiff occurred within the District of Arizona, Defendants regularly conduct business in this district, and Defendants engaged in the conduct alleged in the Complaint—and, thus, are subject to personal jurisdiction in this judicial district.

## GENERAL ALLEGATIONS

8.      Saint Patrick is a disabled veteran who suffers from Postural Orthostatic Tachycardia Syndrome (also known as "POTS"), Bilateral Upper Body Tremors (hand tremors), Chronic Regional Pain Syndrome of the Extremities (also known as "CRPS"), and her mobility is handicapped.

9.      At all relevant times, she has been handicapped within the meaning of 42 U.S.C. §§ 3601 et seq. in that her disability affects her ability to walk, manipulate objects, and maintain her balance.

10.     Saint Patrick's treating physician recommended a service dog to help her with standing, bracing, balancing, and retrieving objects.

11.     On or about March 31, 2017, Saint Patrick applied to rent Unit 1117.

12.     Saint Patrick disclosed to Mark-Taylor that she is a disabled veteran so it could include her disability compensation when evaluating her rental application.

13.     On April 10, 2017, Saint Patrick signed a lease for Unit 1117.

14.     Saint Patrick renewed her lease, without issue, from 2017 to 2021.

15.     Term 27 of the 2021 lease (the "Lease") states:

Reasonable accommodations are changes in rules, policies, practices or services that are reasonably necessary to provide a person with a disability an equal opportunity to use and enjoy a dwelling. Any person needing an accommodation should notify the manager or assistant manager at the Apartment Community that he or she is requesting an accommodation, the nature of the accommodation requested, and a

2

brief explanation of why he/she needs the accommodation. This request for an accommodation may be made by a person with a disability or by any other person acting on behalf of such person. Management reserves the right to seek other information, including medical information, if it determines that it needs that information to determine whether a request for an accommodation is reasonable. If Management determines that a person with a disability needs the accommodation, management will grant the request unless doing so will impose an undue hardship, including an undue financial or administrative burden, or will substantially change the nature of the program that the property offers. Any person who believes that an accommodation request was improperly denied is encouraged to address those concerns to Management's corporate office.

16.     Mark-Taylor charged Saint Patrick a $250 pet fee and $35 a month for pet rent for her service dog, Max.

17.     Soon after, Saint Patrick requested and obtained a reasonable accommodation to use an electronic leash for Max so he could exercise within the San Norterra courtyard, as opposed to the nearby dog park. Saint Patrick needed this accommodation because she has limited mobility and Max was immunocompromised.

18.     To obtain this accommodation, Saint Patrick submitted paperwork to Mark-Taylor stating she has POTS; the condition is permanent; and it limits her ability to sit, stand, lift, and perform manual tasks.

19.     In 2018, Saint Patrick's POTS progressed, which forced her to become homebound given she had a compromised immune system.

20.     Saint Patrick discussed her situation with Mark-Taylor to ensure frequent deliveries would not disturb her work from home or recovery while she was taking intermittent FMLA leave.

21.     On or around July 14, 2018, Saint Patrick sent an ADA Accommodation Letter to Mark-Taylor that provided specific medical documentation for her service dog.

22.     In April 2019, Saint Patrick injured her left wrist.

23.     That same month, Mark-Taylor implemented a mandatory Valet Trash Service, where tenants would pay $35 a month for a service to pick up trash and recycling at the tenant's doorstep.

24.     Saint Patrick could not compact all of her boxes. Specifically, those boxes that were

3

glued or stapled, but the valet service collected all of her trash anyways.

25.     On or about October 31, 2020, Saint Patrick's service dog, Max, was diagnosed with Congestive Heart Failure. Saint Patrick was directed to restrict Max's exercise to leashed walks, which she did.

26.     On or about November 30, 2020, Saint Patrick had surgery on her injured left wrist. Subsequently, Saint Patrick was in occupational therapy for over five months and diagnosed with CRPS.

27.     In early December 2020, a tenant from Unit 1009 stalked Saint Patrick and her service dog for several blocks, even as Saint Patrick took several turns to avoid the tenant and her barking dog.

28.     Saint Patrick reported the December incident to Mark-Taylor.

29.     On or around February 12, 2021, the parties agreed to renew the Lease.

30.     In April 2021, Saint Patrick told Mark-Taylor about another tenant who was threatening to fight her, stalking her around the community, and standing at her door just to intimidate her.

31.     Mark-Taylor directed Saint Patrick to call the police, which she did.

32.     Watts asked Saint Patrick to provide a formal write-up of the incident.

33.     On or about April 21, 2021, Saint Patrick sent her formal write-up, which included medical documentation that reiterated her disability "impacts every aspect of her life," that she was immunocompromised, and made clear that the other tenant was a threat to her health and safety.

34.     Soon after, the two tenants from Unit 1009, with their dogs, began following Saint Patrick and Max around the community.

35.     On or about April 25, 2021, Saint Patrick reported these incidents as disability-related harassment to Mark-Taylor.

36.     On or about April 28, 2021, Mark-Taylor refused to intervene or supply any information about the tenants so Saint Patrick could pursue her own remedies.

37.     On or about May 12, 2021, Mark-Taylor stopped taking Saint Patrick's recycling, even though she was still paying for the mandatory valet trash service.

38.     On or about May 17, 2021, Saint Patrick filed a maintenance request to have Mark-Taylor pick up her recycling.

39.     On May 18, 2021, Watts sent Saint Patrick two notices. The notices allege Saint Patrick was in violation of her lease for not breaking down boxes and the trash valet would not take them.

40.     That same day, Saint Patrick met with Watts to show her the scars from her wrist surgery and explain that she could not physically break down the cardboard boxes.

41.     Saint Patrick asked Watts to waive the requirement to break down the boxes as a reasonable accommodation. Watts agreed.

42.     On May 24, 2021, Saint Patrick emailed Watts to, again, request that the trash valet take her uncompacted boxes. She noted that her neighbor's recycling was empty and the recycling dumpsters contained many boxes that were not broken down. Saint Patrick requested a refund of that month's $35 valet trash fee and a refund of the pet rent she paid for her service dog.

43.     Watts reversed course and denied Saint Patrick's request for reasonable accommodation.

44.     On May 27, 2021, Saint Patrick emailed Mendoza to request that Mark-Taylor take her boxes without requiring her to break them down. In her email, Saint Patrick provided medical documentation from her occupational therapist that specifically stated Saint Patrick is unable to break down boxes—she lacks normal grip strength and has very limited use of her hands due to the pain she experiences from gripping or using force. Saint Patrick also requested a refund of her pet rent paid to date and provided another copy of the 2018 ADA Accommodation Letter.

45.     On May 28, 2021, Colin Clark, counsel for Mark-Taylor, wrote to Saint Patrick to say that Mark-Taylor is denying her requests for reasonable accommodation regarding pet rent for her service animal and the valet trash service.

46.     In Clark's letter, he also, unprompted, offered to let Saint Patrick terminate her lease agreement early in exchange for her waiving her claims against Mark-Taylor.

47.     On or about November 17, 2021, Saint Patrick filed a complaint with the United States Department of Housing and Urban Development ("HUD") concerning Mark-Taylor's refusal to provide her with reasonable accommodations.

48.     HUD provided a copy of Saint Patrick's complaint to RHI, Mark-Taylor, Watts, Mendoza, and Clark.

49.     HUD assigned Saint Patrick's complaint to the City of Phoenix Equal Opportunity Department, where the complaint is still being investigated.

50.     On December 7, 2021, Mark-Taylor and Watts ordered two inspectors to come inspect Saint Patrick's unit. Neither inspector wore masks nor gloves, despite an ongoing COVID-19 pandemic and Defendants knowing Saint Patrick was immunocompromised.

51.     On January 29, 2022, Saint Patrick received a 30-day notice (which was dated January 11, 2022) from Watts informing her that Mark-Taylor was electing to terminate her tenancy and not renewing her lease. The notice gave no explanation why Mark-Taylor would not renew the lease when it had agreed to do so many times over the last four years.

## COUNT I
### (Violation of 42 U.S.C. §§ 3601 et seq.)

52.     Saint Patrick incorporates all the foregoing paragraphs as if fully set forth herein.

53.     The Fair Housing Act prohibits persons from discriminating "in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability] of . . . that buyer or renter. . ." 42 U.S.C. § 3604(f)(1).

54.     It also prohibits discriminating "against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability] of . . . that person . . ." 42 U.S.C. § 3604(f)(2).

55.     Under the Fair Housing Act, the term "discrimination" includes a refusal to "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

56.     Saint Patrick made both verbal and written requests to Defendants for a reasonable accommodation for her service animal under the Fair Housing Act. She included the doctor's letters attached as Exhibits 1, 2 and 3, showing she needed the accommodation.

57.     Saint Patrick also made both verbal and written requests to Defendants for a reasonable accommodation for her valet trash service. She included the doctor's letter attached as Exhibit 4, showing she needed the accommodation although Exhibit 2 already documented the inability to "perform manual tasks".

58.     All other statutory requirements have been complied with, or they were waived by the Defendants.

59.     The requests for reasonable accommodations for her dog and valet trash service would have imposed no significant burden on Defendants, and required only minor changes to their policies, to: (1) make exceptions to pet rent for a disabled veteran's service dog; and (2) take uncompacted boxes, as it had done for two previous years and continues to do for other residents.

60.     Defendants already allow pets in the community and waiving pet rent for a single owner would not impose any significant burden on Defendants.

61.     Defendants denied Saint Patrick's requests for reasonable accommodations.

62.     Defendants also sent Saint Patrick a termination notice and refused to renew her lease.

63.     Defendants rejected Saint Patrick's medical documentation as illegitimate, even though the documents came from licensed physicians in good standing.

64.    Defendants' denials violated the Fair Housing Act and deprived Saint Patrick the equal opportunity to use and enjoy her dwelling regardless of disability.

65.    Defendants' conduct, described above, was intentional and taken in disregard of the rights afforded to individuals under the Fair Housing Act.

66.    As a direct result of Defendants' actions, Saint Patrick has incurred damages in the form of pet rent, a pet deposit, and charges for the trash valet service despite Defendants' refusal to take her trash.

67.    Saint Patrick is entitled to her reasonable attorneys' fees and costs.

## COUNT II
### (Interference, Coercion, or Intimidation under 42 U.S.C. 3617)

68.    Saint Patrick incorporates all the foregoing paragraphs as if fully set forth herein.

69.    Defendants were made aware that Saint Patrick was seeking reasonable accommodations for her service animal and valet trash service, per the Fair Housing Act.

70.    Rather than grant the accommodations, Defendants, without solicitation offered to terminate Saint Patrick's lease early.

71.    On or about November 17, 2021, having met with Defendants' refusals to accommodate Saint Patrick, Saint Patrick filed a HUD complaint. A copy of the HUD complaint was reduced to writing by HUD and signed by Saint Patrick. Afterwards, it was served on Defendants. A copy of the Complaint is attached as Exhibit 5.

72.    In response, Defendants sent Saint Patrick a 30-day notice informing her that it would not be renewing her lease in April 2022.

73.    Defendants' 30-day notice only came after Saint Patrick requested reasonable accommodations, complained of disability-related harassment, and filed her HUD complaint. Prior to, Defendants had no issue renewing her lease annually over the last four years.

74.    Defendants' actions coerced, intimidated, threatened and interfered with Saint Patrick's exercise or enjoyment of the rights granted by the Fair Housing Act.

75.    Due to Defendants' actions, Saint Patrick faces the prospect of homelessness.

76.    This action seeks declaratory relief per 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties.

77.    Saint Patrick is entitled to a declaratory judgment concerning each of Defendants' Fair Housing Act violations and specifying Saint Patrick's rights.

COUNT III
**(Retaliation under A.R.S. § 33-1381 – RHI San Norterra, LLC)**

78.    Saint Patrick incorporates all the foregoing paragraphs as if fully set forth herein.

79.    A.R.S. § 33-1381 makes it illegal for a landlord to retaliate against a tenant for: (1) complaining to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety; or (2) complaining to the landlord of a violation under A.R.S. § 33-1324.

80.    Retaliation is presumed when the tenant makes their complaint within six months of the alleged act of retaliation.

81.    Saint Patrick filed complaints with HUD and the City of Phoenix Equal Opportunity Department concerning FHA violations that materially affect her health and safety.

82.    Saint Patrick also provided written complaints to RHI concerning its failure to provide conveniences for the removal of garbage, as required under A.R.S. § 33-1324.

83.    In response, RHI sent Saint Patrick a 30-day notice of non-renewal that states:

> NOTICE IS FURTHER PROVIDED that in the event that you fail to vacate the premises by the expiration of your lease agreement as described above, Management and/or Owner will immediately commence an action in Special/Forcible Detainer to seek an award of possession of the premises and any damages pursuant to your lease agreement, including, but not limited to, return of any concession granted at the commencement of the lease agreement.

84.    Accordingly, RHI threatened to bring an action for possession after Saint Patrick submitted her complaints.

85.    RHI's actions were retaliatory and entitle Saint Patrick to the recovery of two

9

months' periodic rent or twice the actual damages sustained by her, whichever is greater. *See* A.R.S. § 33-1367 and § 33-1381(B).

### PRAYER FOR RELIEF

WHEREFORE, Saint Patrick prays for judgment against Defendants as follows:

(A)     A declaration that Defendants' failure to accommodate Saint Patrick constitutes unlawful discrimination in violation of the Fair Housing Act;

(B)     An injunction enjoining Defendants, their agents, employees and assigns from: (1) charging Saint Patrick for possessing a service animal; (2) refusing to take her trash and recycling due to uncompacted boxes; and (3) refusing to renew her lease for 2022;

(C)     An injunction permanently enjoining Defendants, their agents, employees and assigns from discrimination on the basis of disability in violation of the Fair Housing Act;

(D)     An injunction permanently enjoining Defendants, their employees, agents, and successors from taking any actions to coerce, intimidate, threaten, interfere or retaliate against Saint Patrick or any other person in any way for that person's opposition to a practice made unlawful by the Fair Housing Act, or for participation in the administrative proceedings or litigation in this case;

(E)     An award of actual damages in an amount to be proven at trial;

(F)     An award of statutory damages under A.R.S. § 33-1367 and § 33-1381;

(G)     An award of punitive damages;

(H)     Attorneys' fees and costs pursuant to 42 U.S.C. § 3613 and the Lease; and

(I)     Such other relief the Court deems just and proper.

DATED this 23rd day of March 2022.

DESSAULES LAW GROUP

By:  /s/ Jonathan A. Dessaules
　　Jonathan A. Dessaules
　　Douglas M. Imperi, Jr.
　　*Attorneys for Plaintiff*

10

1

2                                     **VERIFICATION**

3       1.       I am the plaintiff in the foregoing action;

4       2.       I have read the foregoing Verified Complaint and know the contents thereof;

5       3.       The same are true of my own personal knowledge except as to those statements

6    made upon information and belief, and as to those, I believe them to be true; and

7       4.       I declare under penalty of perjury that the foregoing is true and correct.

8

9       Dated: _3/23/2022_____

10

11                                                          DocuSigned by:

                                                   _Jennifer Saint Patrick_____
12                                                          2C142B81E750447...

                                                   Jennifer Saint Patrick
13

14

15

16

17

18

19

20

21

22

23

24

25

26