Jonathan A. Dessaules, State Bar No. 019439
Douglas M. Imperi, Jr., State Bar No. 034708
**DESSAULES LAW GROUP**
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
Tel. 602.274.5400
Fax 602.274.5401
jdessaules@dessaulesläw.com
dimperi@dessauleslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Saint Patrick,<br><br>Plaintiff,<br><br>vs.<br><br>RHI 1 San Norterra, LLC; Mark-Taylor Residential, Inc.; Logen Watts; and Tracy Mendoza,<br><br>Defendants. | No. 2:22-cv-00462-DLR<br><br>**PLAINTIFF'S HEARING MEMORANDUM ON PRELIMINARY INJUNCTION** |

Plaintiff Jennifer Saint Patrick ("Saint Patrick") alleges that Defendants discriminated and retaliated against her in violation of the Fair Housing Act ("FHA"). The actions that are the subject of this lawsuit include denying her reasonable accommodations relating to a service animal and trash service and, of pertinence to this preliminary injunction hearing, refusing to renew Saint Patrick's lease. Saint Patrick alleges that Defendants refused to renew her tenancy as retaliation for exercising her rights under the FHA and in disregard of her disabilities. Plaintiff seeks a preliminary injunction to enjoin Defendants from evicting her during the pendency of this action.

## Factual Overview

There are very few disputed facts in this case. For purposes of this hearing, it is not expected Defendants will dispute Saint Patrick has a disability, that she filed a HUD complaint, or that Defendants notified Saint Patrick in January 2022 it would not be renewing her lease for a

fifth consecutive year. Defendants include RHI 1 San Norterra, LLC (legal owner of San Norterra Apartments), Mark-Taylor (the property manager), Logen Watts (the former Community Manager), and Tracy Mendoza (Ms. Watts' supervisor).

Defendants have been aware of Saint Patrick's disability since she signed her lease in 2017. She initially requested and obtained as a reasonable accommodation the right to use an electronic leash for her service dog, Max, and subsequently requested that Defendants not charge her "pet rent" for Max. She also asked Defendants' valet trash service to take her uncompacted cardboard boxes because she could not break them down due to her disability. Defendants informed Saint Patrick that it was denying both requests and threatened to fine her for her uncompacted boxes. Max died shortly thereafter. On November 17, 2021, Saint Patrick filed a HUD complaint concerning Mark-Taylor's refusal to provide her reasonable accommodations. Defendants were aware of the HUD complaint before January 2022.

In January 2022, Defendants informed Saint Patrick it would not be renewing her lease when it expired in April and would be terminating her tenancy at that time. Before Saint Patrick filed the HUD complaint, she had renewed the lease four times. She was the only tenant, according to records Defendants have produced, who was informed that her lease was not being renewed since January 2021 with two exceptions. Defendants filed a combined fifteen (15) eviction actions against the other two for non-payment of rent; Plaintiff has always paid her rent without issue.

On March 18, 2022, Saint Patrick requested a reasonable accommodation to renew her rental agreement. Defendants declined to renew her lease but put her on a month-to-month lease with a 60-day window to reevaluate. Because Saint Patrick's tenancy automatically becomes month-to-month if not renewed prior to the end of the lease term and subject to a 60-day notice, Defendants proposed accommodation is really no accommodation at all. However, Defendants' lease allows them to charge an additional 20% per month for the month-to-month lease where the tenant does not sign a new lease. Defendants are charging Saint Patrick the additional 20% for month-to-month rent.

Before declining to renew her lease in 2022, Defendants raised Saint Patrick's rent each year by about 4.68%. Because Saint Patrick did not receive a renewed lease, her increase in rent is nearly double that of other tenants in similar units. Unit 1133 has an identical floor plan, is on the first floor like Unit 1117, and the tenant's 2021 lease expired on April 13, 2022, like Saint Patrick's 2021 lease. The tenant in Unit 1133 received an offer for renewal that would raise his rent $175, or 11%, for 2022.

The threat of being evicted or forced to move compounds several of her disabilities. Additionally, Defendants' refusal to renew Saint Patrick's lease makes it impossible for her to obtain a new service dog because she must provide proof of stable housing to obtain one. Moving can set back the training for a service anywhere from one month to an entire year. A service dog for a person with Saint Patrick's disabilities is typically trained to, among other things: (1) help them balance or act as a counterbalance; (2) perform momentum pulls, where the dog propels them forward; (3) retrieve items since a person with POTS may pass out if they attempt to bend over and pick objects up; (4) bark (or another task) to alert others that the owner needs assistance; (5) help the owner get dressed; and (6) alert others if the owner's blood pressure or heart rate drops or rises. The service dog may also help alert others or help the owner find their way home, find their car, etc. if they get disoriented or confused. Without the service dog, an owner with POTS will struggle to do most tasks that require them to leave the house alone and risks suffering significant injuries if they do.

Defendants have not offered a single, cogent explanation for refusing to renew Saint Patrick's lease. Mendoza, testifying as a 30(b)(6) witness, claimed a lack of knowledge as to why Saint Patrick's lease was not renewed other than to say it was "within [their] contractual right" to do so, testified she was not personally involved in the decision, and that Defendants regularly do not renew leases based on the "exposure of a floor plan." Watts, on the other hand, testified the non-renewal of Saint Patrick's lease was a joint decision she made with Mendoza and Defendants' attorney, Colin Clark. Watts testified that Defendants did not renew Saint Patrick's lease because

"it just seemed like Ms. Saint Patrick was not happy at San Norterra" based on a "resident conflict she had back in the spring of 2021." Watts could not recall any other tenants who complained and did not have their lease renewed. The lease of the tenant with whom Watts had her conflict was renewed in 2022. In fact, all tenants were offered lease renewals in 2021 and 2022 except for two tenants who Defendants had sued to evict for non-payment of rent more than a dozen times in a twelve-month period.

**Argument**

## I. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION.

As outlined in her application for temporary restraining order and preliminary injunction, which is incorporated herein by reference, Saint Patrick meets all elements for a preliminary injunction. With respect to the non-renewal of her lease, Saint Patrick can show a likelihood of success on the merits, possibility of irreparable harm, a balance of equities tipping sharply in her favor, and that an injunction is in the public interest justifying a preservation of "the status quo and the rights of the parties until a final judgment on the merits can be rendered." *Arizona Recovery Housing Ass'n v. Arizona Dep't of Health Services*, 462 F. Supp. 3d 990, 996 (D. Ariz. 2020) (internal citations omitted). We address those elements, and the evidence Saint Patrick anticipates presenting at the hearing, briefly.

### A. Substantial Evidence of Retaliation and Discrimination Exists.

It is illegal to "coerce, intimidate, threaten, or interfere with any person" who exercises their rights under the FHA. 42 U.S.C. § 3617. For this type of claim, a tenant must show: (1) they engaged in a protected activity; (2) the landlord subjected them to an adverse action; and (3) there is circumstantial evidence that shows the adverse action was related to the protected activity. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). Some factors that may evidence a discriminatory purpose are whether the decision specifically impacts one class of persons over others; whether the sequence of events shows the purpose of the action; and whether there were departures from normal procedure, especially if factors usually considered important would

strongly favor a contrary decision. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266-68 (1977); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004) (plaintiff alleged a colorable claim of discrimination where she alleged all other tenants in her section of a mobile home park were offered long-term leases when she was denied one). *Arlington Heights* gives the example of a town changing the zoning of a property suddenly after discovering the plaintiff intended to build integrated housing. 429 U.S. at 267.

Relatedly, courts have held that a causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2nd Cir. 1996) (the time between the plaintiff's initial complaint and her discharge was 12 days); *Cifra v. G.E. Co*., 252 F.3d 205 (2nd Cir. 2001) (finding the trial court erred by granting summary judgment where the defendant fired the plaintiff 20 days after the defendant learned she hired an attorney to pursue gender discrimination claims). The 9th Circuit Court of Appeals has repeatedly held that causation can be inferred from timing alone where the adverse action follows shortly after the protected activity. *See Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) (adverse employment actions occurred less than three months after employee filed formal complaints against his employer); *Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989) (prima facie case of causation where employee discharges happened within 60 days of EEOC hearings).

Here, the evidence of retaliation and discrimination is compelling and largely undisputed. The following facts will be established at the hearing:

- Saint Patrick filed her HUD complaint less than two months before Defendants decided not to renew her lease.
- Saint Patrick was the only tenant, except for two against whom Defendants filed serial eviction actions for non-payment of rent, whose lease was not renewed in two years.
- Defendants' 30(b)(6) witness could not offer a reason why they did not renew Saint Patrick's lease.

- Defendants' community manager offered a sole reason why they did not renew Saint Patrick's lease: they believed Saint Patrick was "unhappy" after being harassed by another tenant. However, Defendants renewed the leases of all other tenants perceived as unhappy, including the harassing tenant's lease.

- Defendants testified that management was aware of her HUD complaint and requests for reasonable accommodations when they decided not to renew.

- The 30(b)(6) witness testified that they consider only two factors in deciding not to renew a lease: exposure of a particular floor plan and renovations. Neither factor applied in Saint Patrick's case.

Saint Patrick has met her burden of proving a *prima facie* case of discrimination and harassment based on the above. The timing, alone, establishes liability and the additional undisputed facts show no legitimate reason for renewing Saint Patrick's lease for a fifth year. Defendants do not have a credible explanation for not renewing Saint Patrick's lease. Once the tenant makes a prima facie case of retaliation, there is an inference of intentional discrimination and the burden of proof shifts to the landlord to articulate a legitimate, nondiscriminatory reason for their actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining Fair Housing Act discrimination claims."). Even if the landlord offers a reason, that reason must be worthy of credence and not merely a pretext for discrimination. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (finding landlord's discriminatory statements could undermine landlord's nondiscriminatory reason for evicting tenants). Perceived unhappiness is not worthy of credence considering Defendants' treatment of other tenants.

The only reason given, Defendants' perception that Saint Patrick might be unhappy, is not a legitimate, nondiscriminatory reason for not renewing her lease. Saint Patrick declined an offer to cancel her lease months early, other tenants also perceived as unhappy had their leases renewed, and even the harasser's lease was renewed despite numerous instances of Saint Patrick's harasser expressing what appears to be profound unhappiness to Defendants during 2021.

Not only have Defendants failed to offer a single non-discriminatory, non-retaliatory reason for the non-renewal of Saint Patrick's lease, they have obstructed discovery in this case, destroyed evidence, and generally refused to participate in the discovery process in good faith. As discussed in Plaintiff's motion for sanctions, Defendants produced a 30(b)(6) witness that claimed to know almost nothing and did almost nothing to prepare for the deposition. Although two witnesses testified in their depositions that they stored notes in the electronic file, no such notes have been produced. Watts testified that she participated in a "joint decision" with Mendoza and Defendants' counsel, but Defendants have not produced any such communications among the group and Defendants are now taking the position that the reason for Saint Patrick's termination cannot be disclosed on attorney-client privilege grounds. But no privilege log has been produced.

Most alarmingly, Watts testified she deleted her emails right before she left in April 2022, after Saint Patrick filed her HUD complaint and this lawsuit. Saint Patrick asked Defendants what efforts they took to restore those emails, but Defendants have not answered. To date, Defendants have not produced any emails from Mendoza's or Watts' email and only produced a handful of emails from counsel's email. Defendants are playing games with discovery by hiding the ball. Defendants' obstruction suggests the evidence withheld would not be favorable. As such, the Court should grant the motion for sanctions, strike Defendants' answer, and enter default.

The non-renewal of a contract can constitute discrimination, even if there is no right or entitlement to renew. *Williams v. Alhambra School District No. 68*, 234 F. Supp. 3d 971, 980 (D. Ariz. 2017) (superintendent of school plausibly stated a case of race discrimination when school district did not renew his contract, even though the superintendent was not entitled to renewal under Arizona law).

**B. Saint Patrick, if Forced to Move Out Because Defendants Have Refused to Renew Her Lease in Retaliation of her Exercising Her FHA Rights, Faces Imminent and Irreparable Harm.**

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before

a decision on the merits can be rendered." 11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2948.1, at 129 (3d ed. 2013). "[I]t is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) (listing eviction and foreclosure cases). Eviction from a person's home constitutes irreparable harm that justifies the issuance of a preliminary injunction. *Mitchell v. U.S. Dept. of Housing and Urban Development*, 569 F. Supp. 701, 704-05 (N.D. Cal. 1983) (defendant refused to renew the plaintiff's lease and sought to evict her when she did not leave).[1] The harm was "irreparable" in *Mitchell* because the plaintiff was unlikely to find other affordable housing and there is a scarcity of public housing. *Id.* Similarly, in *Johnson v. Macy*, the court found that an eviction would irreparably harm the plaintiff because it would be disruptive to her life and a wrongful eviction has no adequate remedies at law to address that harm. 145 F. Supp. 3d 907, 920 (plaintiff said she developed strong ties in the community and would be homeless if evicted).

No remedy at law adequately addresses the harm to Saint Patrick if Defendants are allowed to terminate her tenancy and evict her. Nothing prohibits Defendants from giving Saint Patrick sixty days' notice and terminating her month-to-month tenancy. Without a preliminary injunction, Defendants would be free to evict her at any time. This presents serious complications for her disabilities as well as her ability to obtain a replacement service dog for Max. Saint Patrick is presently on a month-to-month lease due to Defendants' refusal to offer her a renewed lease.

Likewise, Saint Patrick must supply proof of stable housing and proof that she can take care of a service animal before she can have one. Raime Cristner, Director of Operations for Spirit Dogs, a nonprofit that trains service dogs, is not aware of a single organization that would allow someone to have a service dog without proof of stable housing. Moving also makes it more

[1] Defendants have sought to distinguish *Mitchell* on the grounds that it involved public housing and a statutory requirement that a landlord have "good cause" to evict in public housing cases. While the legal wrong committed by the landlord is different, the irreparable harm suffered by the tenant is the same.

difficult to train a service dog because the environment is changing, the owner has less time to dedicate to training, and the time between training sessions is extended. Moving also makes it more difficult for a person with Saint Patrick's disabilities to manage their symptoms given the stress of such a major life change. In turn, Saint Patrick could not prove she is able to take care of a service animal if her housing situation remains in flux. Saint Patrick is essentially confined to her house because she does not have the aid of a service dog.

### C. Equity Favors Saint Patrick's Continued Occupation of Her Home.

The balance of hardships in this case tips overwhelmingly in Saint Patrick's favor. Saint Patrick faces the prospect of homelessness, severe illness, and disability complications if Defendants force her to move out of Unit 1117. She also cannot obtain a service dog while her housing situation is unstable. As a result, her quality of life suffers as her day-to-day activities are limited. On the other side, Defendants face no hardship whatsoever. Saint Patrick pays her rent on time, she has not violated her lease, and she has not caused any issues within San Norterra that would justify terminating her lease. *See Johnson*, 145 F. Supp. 3d at 920 (equity greatly favored tenant where she did not materially violate the lease, she did not miss rent, and she was not untimely in paying her rent).

Notwithstanding the Court's order that Saint Patrick's rent would remain the same as it was under the lease to preserve the status quo, Defendants have ignored this directive and imposed a 20% month-to-month charge. While Saint Patrick could not afford to pay a substantial increase in rent, such as the 50% increase suggested by Defendants at the initial hearing in this matter, she does have the ability to pay a modest rent increase consistent with what Defendants offered other San Norterra residents with similar units to renew their leases.

### D. Public Policy Strongly Favors Preventing FHA Violations.

"[I]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. "The public interest has been authoritatively declared by Congress in its enactment of the FHA." *Gonzalez v. Recht Family*

*P'ship*, 51 F. Supp. 3d 989, 992 (S.D. Cal. 2014) (internal quotations omitted). 42 U.S.C. § 3613(c) empowers a court to grant relief it "deems appropriate," including granting a preliminary injunction that either enjoins the defendant from engaging in discriminatory actions or ordering the defendant to take affirmative action. In a case to enforce the Fair Housing Act, "the public interest is clearly served by the entry of a preliminary injunction." *Johnson v. Macy*, 145 F. Supp. 3d 907, 921 (C.D. Cal. 2015) (rejecting defendants' argument that public policy was not served because the plaintiff did not live in publicly subsidized housing). The United States Supreme Court has "recognized that a trial court must be permitted sufficient flexibility to fashion effective and equitable remedies in civil rights cases. The twin goals in housing discrimination cases are to insure that no future violations occur and to remove any lingering effects of past discrimination." *Gore v. Turner*, 563 F.2d 159, 165 (5th Cir. 1977) (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238 (1969), abrogated on other grounds).

Courts have enjoined landlords from evicting tenants and required defendants to make lease offers. *Glover v. Housing Authority of City of Bessemer, Ala.*, 444 F.2d 158, 162 (5th Cir. 1971) (instructing the lower court to direct defendant to provide plaintiff with an opportunity to be reinstated in an apartment due to violations of HUD regulations); *Rana v. Gu*, 220 F. Supp. 3d 989, 995-96 (N.D. Cal. 2016) (entering injunction where the defendants could not terminate the plaintiffs' tenancy without an order from the court); *Johnson v. Macy*, 145 F. Supp. 3d 907 (C.D. 2015) (enjoining defendants from taking any steps to evict plaintiff during pendency of litigation); *Project Life, Inc. v. Glendening*, 139 F. Supp. 2d 703 (D. Md. 2001) (entering permanent injunction requiring port authority to lease space to nonprofit); *LNG Development Co., LLC v. Port of Astoria*, 2010 WL 1027862 (D. Or. Feb. 3, 2010) (injunction required defendants to take steps to renew a master lease so tenant could exercise its lease option).

## II. THE COURT CAN, AND SHOULD, ORDER DEFENDANTS NOT TO EVICT PLAINTIFF DURING THE PENDENCY OF THIS ACTION WHILE HER CLAIMS OF DISCRIMINATION AND RETALIATION ARE LITIGATED.

There is ample case law, cited above, holding a court is empowered to prevent a landlord from evicting a tenant where the evidence shows that the eviction is retaliatory or discriminatory. Here the evidence shows both.

While Saint Patrick recognizes the Court may be cautious about compelling the litigants to renew a contract, the Court has the power to maintain the status quo in a variety of ways short of requiring Defendants to provide Saint Patrick with a new one-year lease. First and foremost, the Court can order Defendants at the conclusion of this case to offer a renewed lease on terms consistent with renewals offered to others with similar or identical units. *See Coast Village, Inc. v. Equilon Enters., LLC*, 163 F. Supp. 2d 1136, 1148 (C.D. Cal. 2001) (entering a preliminary injunction enjoining defendant from taking any steps toward termination of franchise agreements, failing to renew the agreements, taking any actions toward non-renewal, or engaging in retaliatory conduct meant to create pre-textual grounds for termination or non-renewal agreements. Then, at conclusion of the case, ordering defendant to present renewed franchise agreements to plaintiffs and giving them an opportunity to accept the terms of renewal.).

In the interim, the Court can maintain the status quo by ordering Defendants to treat Saint Patrick as if her lease had been renewed under such terms. *Rana*, 220 F. Supp. 3d at 996 (tenancy continued under the terms of the lease); *Johnson*, 145 F. Supp. 3d at 921 (C.D. 2015) (same).

The Court can order a reasonable rent. What constitutes a reasonable rent is easy to determine from the records that Defendants have produced in this case. A nearly identical unit was renewed with an 11% increase. This is neither the 20% increase on a month-to-month lease nor the 50% increase Defendants' counsel suggested was the market rate at the initial hearing in this case. Saint Patrick should be treated the same as non-disabled tenants against whom Defendants are not retaliating. 42 U.S.C. § 3604(b); *see also Hobson v. George Humphreys, Inc.*, 563 F. Supp. 344, 350 (W.D. Tenn. 1982) (FHA violation where defendant offered the plaintiffs,

black women, different and higher rates than given to white buyers). Saint Patrick recognizes that her rent may fluctuate, and she is not asking the Court to freeze her rent based on 2021 rates. However, Defendants are not entitled to charge her in excess of the market rates simply because it refused to renew her lease unlawfully.

An order that Saint Patrick cannot be evicted during the pendency of this action and setting the rent at no more than 11% greater than what it was in her 2021 lease is the bare minimum necessary to maintain the status quo while the rest of this case is being litigated.

**Conclusion**

Defendants' solution for Saint Patrick's requests for reasonable accommodations was to not renew her lease for the first time in five years. This solution flies in the face of not only the Fair Housing Act but also Defendants' own operating procedures and practices to offer renewals to virtually all existing tenants except those who have caused Defendants to file serial eviction actions for non-payment of rent. The only similarity between Saint Patrick and the two serial non-payors is that both appear to cause problems for Defendants. The non-payors collectively forced Defendants to file over a dozen eviction lawsuits; their non-renewal is neither surprising nor unjustified. Saint Patrick's crime was to ask for reasonable accommodations for her disabilities. Her non-renewal is both shocking and unjustified. A preliminary injunction preventing Defendants from implementing this final solution is necessary.

DATED this 9th day of May 2022.

DESSAULES LAW GROUP

By: /s/ Jonathan A. Dessaules
Jonathan A. Dessaules
Douglas M. Imperi, Jr.
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Colin L. Clark
LAW OFFICES OF SCOTT M. CLARK, PC
4222 E. Thomas Road, Ste. 230
Phoenix, Arizona 85018
colin@scottclarklaw.com
*Attorney for Defendants*

/s/ Hilary L. Narveson